Mr. Edison. May it please the Court, I would like to reserve three minutes of my time for rebuttal, and good morning. My name is Chris Edison, and I represent the appellants in this matter, Lyle and Darren Rodin, doing business as D&L Farms. I'll note for the record that Lyle Rodin passed away during dependency of this action, and we continue on with his son, Darren Rodin. The Rodins are farmers in the small town, near the small town of Marion, in North Dakota. And this case arises out of a negligence claim that was made against them, based on an exposure taking place in a farm building, on their farm, by a relative, and sometimes hired hand, hired hand is probably inaccurate, a person that did work for them, to a heater. A guy by the name of Larry Albert went to the Rodin farm to do some repair work on a heater for a Quonset or farm shop structure. In the interim, the Rodins had set up, had borrowed from a neighbor, and set up a propane space heater within that structure. Unbeknownst to them, or at least the testimony creates doubt on that, unbeknownst to them, Mr. Albert went to the farm, apparently to assist them with repairs made to, not the propane heater, but the regular farm shop heater. And during the time that he was alleged to be repairing the propane heater, he alleges he was exposed to carbon monoxide given off by the propane heater, and suffered significant personal injury as a result, including a brain injury. Counsel, as you know, our job today is to make our best educated guess as to how the North Dakota Supreme Court would construe the pollution exclusion. How would you say that our decision in Highland Partners affects the analysis as to whether or not we can give technical meaning to the terms in this exclusion? The Highland Park decision, as I understand it, followed that line of reasoning on these cases, because there have been, I think, as even recognized by North Star's counsel in his brief, a fragmentation of authority from across the country that falls into basically two buckets. One bucket that I believe is followed by the Highland decision is more of a definitional type of analysis, where it looked strictly at the definitions that are contained within the policy, which are very similar, if not identical, to the policy at issue that was issued by North Star. And it determined, sort of in isolation, those definitions. It is not controlling here, obviously, because I believe that was under the law of the state of Arkansas, and it is not controlling in North Dakota law. So I think what you need to do to determine its applicability under North Dakota law is look at the analysis that has been given to insurance policies by North Dakota. And counsel has recognized that in the other bucket of cases that has found that propane exposure, carbon monoxide exposure from a propane heater, specifically, is not excluded by this particular type of exposure. It is a different analysis, and sometimes it's expressed as a reasonable expectations doctrine analysis. So you've got kind of those two buckets. Not all of those cases expressly put it as a reasonable expectations. North Dakota... Well, it's my understanding that the North Dakota Supreme Court has refused to adopt that doctrine. Your Honor is correct. North Dakota has expressly... They've been asked to revisit that on occasion, and they have not specifically overruled their earlier decision rejecting the reasonable expectations doctrine. But when given the subsequent opportunity to apply it, they did not. Instead, they said, even if we applied it in this case, it would not apply. Now, the distinction is one of the things in the Selly case, Selly v. North Dakota Insurance Guarantee Association, which I believe is 494 Northwest 2nd 151, the North Dakota Supreme Court did express and has been reaffirmed that a term in an insurance policy should be construed to mean what a reasonable person in the position of the insured would think that it means, which is a very subtle distinction between the reasonable expectations doctrine. As I understand those distinctions, the reasonable expectations doctrine says that you cannot... The rejection, the North Dakota's rejection of the reasonable expectations doctrine says that you cannot put the actual expectations of the insured subjectively about this policy in the record in order to try to interpret the policy. However, when interpreting the policy, you do take into consideration a reasonable interpretation by a reasonable person in the position of the insured. So it seems to be the distinction between the subjective and objective. As I understand it, that would be the distinction. So in other words, in one case, you wouldn't specifically take into consideration testimony from Darren Rodin that, hey, I went over this with my insurance agent and he told me there was going to be coverage. For purposes of the coverage action, unless it's ambiguous, you could not take into consideration that testimony. And that is a subtle distinction, but I think does come into play here. So in other words, the North Dakota Supreme Court would take into consideration a reasonable person's interpretation of the policy in Darren Rodin's situation. So while some of the cases, and I think if you go and read the reasonable expectation cases, not all of them are talking about that subjective element. They put it in reasonable expectations, but the discussion is more along the lines of a reasonable person in the insured's shoes. So what I think this court has to do is take a look at the policy as a whole, giving meaning and context to each of the terms that are expressed in there and interpret them as someone, and I'll say Mr. Rodin is a reasonable person, in Mr. Rodin's situation would interpret them. So what is the context of those provisions? As the court is aware, the first thing that North Dakota would say to do is, it is our burden, it has been our burden, to prove that there is coverage under the insuring agreement afforded by the policy. In other words, it has to be the things like, it has to be bodily injury or property damage caused by an occurrence. There is no debate here that, though we have met our burden of proving that under the insuring agreement of the policy, there is coverage. There was a bodily injury alleged in the complaint filed by Mr. Albert. He claims to have serious injury, including a brain injury, resulting from his exposure, he alleges, at the Rodin's farm. There's no question that this was an occurrence. It was accidental from the standpoint of the insurer. So you get past that, we have met our burden of proof, triggering coverage under the insuring agreement. What happens then? If North Star, on the other hand, believes that an exclusion is applicable, it is their burden to prove that exclusion. They have raised the pollution exclusion. So the pollution exclusion in this case is consistent with standard forms throughout the industry. Their form is not an ISO form, but it's very, very similar. It basically says that any bodily injury or property damage is excluded if caused by pollution. Then it basically defines pollution as bodily injury or property damage that results from the actual alleged threatened, discharged, dispersal, seepage, migration, spill, release, or escape of pollutants into or upon land, water, or air. It is what is known in the industry as an absolute pollution exclusion. We don't believe it is absolute, but that's what it's known as. But the context overall of what this means is also the rest of the exclusion has to be looked at. What is it talking about? It can't just be under the definition of pollutant. It says any solid, liquid, gaseous, thermal, or radioactive, irritant, or contaminant, including fumes, smoke, soot, paper, other things. Under NORSTAR's interpretation of this policy, the word pollution has no impact or effect on the interpretation of this policy at all. In other words, you could take that word out and just call this a contamination or irritant exclusion, and it would have the exact same effect. But when a reasonable person is reading that term, there's an expectation or implication that it's talking about pollution in a different sense, a more broad definition. Not broad, but specific to environmental pollution. That interpretation that is reasonably led to by an insured is bolstered by the exclusion itself. In other words, you can't, as I believe NORSTAR is doing here, you can't just look at the definition itself, because the definition says what things constitute a pollution are defined as a pollution. But if you go back to the pollution exclusion, that is what sets forth the actual circumstances under which those things that could be a pollutant are actually going to be excluded as pollutants. So you have to read those two things in conjunction. And if you look at this, the sub-two of the pollution exclusion clearly goes on to talk about things that are specific to federal government cleanup of pollution. This is Judge Smith. What's your response to the church case, church mutual insurance case, where this court faced the definition of pollutant in a context dealing with carbon monoxide and concluded that it did qualify under the exclusion as a pollutant that could serve to exclude coverage? My response is that we're dealing with North Dakota law here, and this is, I think the court needs to go a step farther. I will concede that under certain circumstances, carbon monoxide can be a pollutant. But when we're talking about a limited exposure that does not have the multiplicity of litigation, that risk, or extremely high damages for, one, the pollution itself, two, the government cleanup, and the sort of associated issues and ongoing exposures that really were the point of the passage of the pollution exclusion by the industry in the first place. There really is no debate that when the industry began developing the pollution exclusion that it was for one purpose, to avoid that ever-expanding environmental exposure to things like the Clean Water Act. Does North Dakota law recognize that as an interpretive tool for an insurance policy? I will say yes and no to that. You have to get to an ambiguity first. So in other words, once you get to an ambiguity, you can take into consideration all of the circumstances that was led to by the industry to take that about what the purposes were. But you do absolutely have to get to an ambiguity first. So a follow-up on a couple of the questions that have been asked here today, what is it about North Dakota law that makes it different than the cases that our court has decided that carbon monoxide, this type of exposure, is a pollutant and falls within the exclusion? I think one, I think it's the Selle case and its reliance on interpretation from a reasonable person's standard and the fact that North Dakota is very strong in its holding that you must interpret these policies as a whole, given meaning to each and every clause, word, and phrase. And so then you have to go back and look at not just the definitions in isolation. You have to go back then with those definitions in mind and then apply them to the exclusion itself. And maybe our argument can be, I see my time is up. May I briefly finish? I've been trying to come up with an analogy about something like this. The policy also contains a war exclusion. And if you imagine a world that's slightly different, if the policy then contained a definition of war in which it said, any bodily injury or property damage caused by violence to another, I don't think this court would have any trouble with determining that that is, that creates an ambiguity because the use of the term war is incongruous with the definition they use. And so if you look at a reasonable person reading through this, they would be thinking, oh, well, their interpretation here is, and the reason that this is here, is that we're talking about pollution in the classic sense that requires some multiplicity of litigation and expense that just not is involved in this case. Thank you. Thank you. May it please the Court, opposing counsel, my name is Chris Wills. I represent the appellee in this case, Northstar Mutual Insurance Company. Northstar respectfully requests that this court affirm the district court's decision that found that there was no coverage under the Rodin's insurance policy for the claims made in Mr. Albert's lawsuit. I've got two general topics to talk about today. The first is the motion to certify that's been made by the Rodin's. The second is the merits of this appeal. And based on the questioning from the panel, I'm going to start with the merits and then maybe we can move over to the motion to certify. The question in this case, as it was recognized by the panel earlier, is whether carbon monoxide is a pollutant, as that word is defined by the Northstar insurance policy that was issued to the Rodin's. Now, that policy was issued in North Dakota. North Dakota law applies. And under North Dakota law, the starting point for purposes of interpreting an insurance provision is the policy language. If the policy language is clear on its face under North Dakota law, then that's the end of the analysis. There's absolutely no need to go any further. Counsel, that's very true. So I thought the parties did a very good job of pointing out the two very different paths that courts around the country have taken with this same provision. Why doesn't the fact that federal courts can't agree on what this provision means, why doesn't that lead us to the conclusion that this is ambiguous? And if it's ambiguous, under North Dakota law, we would construe it against the insurer. So, Your Honor, you're correct. There are a lot of cases throughout the federal courts on that. But in reaching those conclusions, what the courts typically do is they either follow the plain language of the provision, which is what we're urging, or in the other cases the courts typically look to things like the reasonable expectations of the insured or they look at the history of the exclusion. And both of those analytical tools are unavailable here. And I think that's why you can look and say, okay, we've got a bunch of different conclusions as to how we interpret these policies and whether there is coverage under them, but that doesn't necessarily make the provision ambiguous under North Dakota law. Counsel, there's actually a third line of cases. And this is a long lead-up, so bear with me. But one federal court stated, the language of the pollution exclusion clause is so broad that it cannot literally mean what it says. As defined, pollutants is so broad that ambiguity is created. Another federal court held the term pollutant is ambiguous because there is virtually no substance or chemical in existence that is not an irritant or contaminant. So my question is this. Doesn't a term become ambiguous at some point if its meaning is so broad that it encompasses almost anything? And if so, where is that point in the context of a policy exclusion? Thank you, Your Honor. I think that gets back to the decision that this court issued in the, I believe it's the United Fire case, where this court looks specifically at the arguments that come, and I think it's from a Tenth Circuit case, that a lot of that reasoning comes in that you were citing to, Your Honor, where they talk about things like, well, the pollution exclusion, it could be so broad, right, that you could say if you walk through a store and you slipped on Drano, that that was covered by the scope of the pollution exclusion. And in the United Fire case, which was a decision of this panel, I believe from the year 2014, this court held that the pollution exclusion does in fact have boundaries, and that those boundaries make that exclusion unambiguous. So, one of those boundaries is that the personal injury has to be caused by the release or escape of a pollutant, which is exactly what we have here. We have the release or escape of carbon monoxide from the portable propane heater, and this court also held that… Well, it's not just a release or escape. It's also seepage and all kinds of things, which could encompass almost anything. Well, I will agree that the language is broad, but I also think that release, escape, and the other words that are used there are limiting factors. For example, I know Mr. Edison has talked quite a bit about the interaction with the lead exclusion, and if we take that lead exclusion and we use that as an example of what wouldn't be covered by the plain language of the pollution exclusion, if you have a child that's sitting on a deck eating lead-based paint chips, right? You're not going to have escape. You're not going to have seepage. You're not going to have release. That's where the lead pollution exclusion comes in. It's the same thing if you think of a child sitting on a deck and using a lead pipe as a teething device, right? But what if the child is sitting there eating rat poison that had seeped out of a container? That's a good question, Your Honor. I guess it would depend on the facts and circumstances of the individual case in terms of how the rat poison actually escaped. The good news for us in this case is that's not what we've got. We have a classic release or escape of pollutants from a portable propane heater. And I want to go back to your question, Your Honor, because in United Fire, this court also said that there is another limiting factor in the pollution exclusion itself, which is that the exclusion only applies where the irritating or contaminating nature of the pollutant is what causes the injury.  I wanted to ask you about that because your argument seems to be based on a focus on the plain meaning of terms, more of a textualist approach. What textual basis is there for limiting the exclusion to harm from the nature of the substance, which is what you just mentioned? Well, I think the United Fire case is looking particularly into the language of the exclusion itself. And that's also what we have in this case. We're not dealing with a case where we have a carbon monoxide exposure and there's some sort of tenuous link between that exposure and the injury that's alleged. The allegation specifically here is that Mr. Albers was exposed to carbon monoxide and that the irritating and contaminating properties of carbon monoxide are what caused his injury. I guess to follow up on that, that's not in the language of this provision, though, the exclusion. It's just the bodily injury that results from the actual alleged or threatened discharge or seepage. So there's no, I guess to follow up, I guess there's nothing in, yes, we have said it, but there's nothing in the language of the exclusion. And I guess, Your Honor, I just refer you back to the United Fire case where the court discussed that as a potential limiting factor of the exclusion. Can I just interrupt? I guess the point is if you're relying on the language itself, it's not there, right? I'd have to refer you back to the United Fire case. Because I believe this court's opinion in United Fire was that that limitation is present in the language of the exclusion as they read it in that case. I think that also hearkens back to the Wolters case. I realize that's a Minnesota Supreme Court case from 2013. But in the Wolters opinion, the Minnesota Supreme Court said, look, there certainly are areas where this pollution exclusion could be broad and where we may have difficulty trying to figure out what the limitations of that exclusion are. But carbon monoxide exposure that causes an injury, it's just not one of them. Carbon monoxide is a pollutant under the plain and ordinary understanding of that word in those policies. I would also point the court back to, in terms of, well, let me start over. So we've talked a lot about the pollution exclusion. The policy at issue in this case defines pollutant as something that is an irritant or a contaminant. Obviously, we don't have a definition of those two words in the policy. We never do when we're dealing with the absolute pollution exclusion, which is what we have here. But in North Dakota, undefined terms in an insurance policy are to be given their plain and ordinary meaning. And that takes us back to Highland Partners, doesn't it? It does, Your Honor, and that's exactly where I was trying to get back to. Judge, you asked about that case earlier. Highland Partners was a North Dakota case. North Dakota law applied, and this court was interpreting the absolute pollution exclusion, which is the exact same exclusion that the court is dealing with in this case. And in that case, this court, and I believe, Judge Kelly, you were on that one, the Highland Partners case, this court concluded that irritant means something that irritates, and contaminant is something that soils, stains, corrupts, or infects by contact or association. This court specifically looked to the Webster's Dictionary in adopting that interpretation, and carbon monoxide is a substance that would fit within it. Carbon monoxide soils, stains, corrupts, or infects the air, so it fits nicely within the definition that this court gave previously in the Highland Partners case. What is your view of the reasonable expectation doctrine, I'll just call it loosely, in North Dakota? So my understanding, Your Honor, is there is no reasonable expectation doctrine in the state of North Dakota. The case that I believe the Rodin's relied on in this case to say that you could look at the reasonable expectation of the insured is the Fisher case, which is a 1998 North Dakota Supreme Court case, which says we're not deciding whether the reasonable expectations doctrine applies, but even if we were to consider it here, there wouldn't be a reasonable expectation of coverage. That Fisher case was expressly overruled by Lange-Steeney, or Lange-Deniskey. It's a 2004 North Dakota Supreme Court case, it's 2004 ND 147, and at paragraph 31, the North Dakota Supreme Court expressly rejects the doctrine of the reasonable expectation of the insured applying. In fact, the district court in this case considered that argument, which was made both by Mr. Albert and by the Rodin's, and in a footnote, I believe it's footnote three of its opinion on page seven, the district court said that doctrine isn't available because of this Lago-Deniskey case from 2004. So I don't think the court can look at the reasonable expectation of the insureds, and as the court knows, that is the primary source of courts around this nation saying that there is coverage for these carbon monoxide claims under the pollution exclusion, they look at the reasonable expectations. A good example of that is the Langone case, Wisconsin Court of Appeals case from 2007 at 731 NW 2nd 334. I forget who it was, I believe it was you, Judge Smith, who asked about the Church Mutual case, and that is the case that the district court in this case actually relied on in determining that carbon monoxide was a pollutant. In this case, the district court looked at Church Mutual. Church Mutual was decided under Nebraska law, but this court in that case looked at the Merriam-Webster's Dictionary and said, well, contaminant is something that contaminates, and contaminate means to make unfit for use by the introduction of unwholesome or undesirable elements. The district court then applied that definition to conclude that carbon monoxide is a contaminant. It makes the air unfit to breathe if it's introduced at high levels. I believe there are three cases from this court, all of which have considered the issue of whether carbon monoxide is a pollutant under the absolute pollution exclusion, and every single one of those cases has concluded that it is. Carbon monoxide fits as an irritant or a contaminant. In fact, in preparing for the argument today, I went back and looked, and every single district court within the Eighth Circuit that has been asked to decide this issue has had no difficulty concluding that carbon monoxide is a pollutant for purposes of the absolute pollution clause. The final point I'd like to make is this technical meaning argument that the Rodin's make. They say that pollution should have a technical meaning ascribed to it, which means traditional environmental pollution. In making this argument, the Rodin's don't cite to any case that's been decided that says contaminant and irritant in the absolute pollution clause has a technical meaning. I think that's significant given that there are more than 200 cases that talk about what the absolute pollution exclusion says. So, counsel, why shouldn't the North Dakota Supreme Court decide this rather than judges from Nebraska, Iowa, and Arkansas? Thank you, Your Honor. Two reasons. Number one, this court has said that certification is only appropriate when the reviewing court is genuinely uncertain about a question of state law. There are no cases in North Dakota State Court on the pollution exclusion, but we have enough guidance from the North Dakota Supreme Court on how they interpret insurance policies that this court can resolve the question. In fact, the very issue that's involved in this case, whether the pollution exclusion applies to bodily injury claims, has been litigated in North Dakota federal courts on three occasions, including this case. The other two occasions were decided before this case was brought, and in both, Judge Hovland in North Dakota was able to resolve whether the claims that the plaintiff had brought fell within the pollution exclusion. The second reason, and I'll be brief here because I see my time is up, is that the Rodin's could have asked for certification before the district court, and they failed to do so, and this court has a longstanding policy of not allowing people to then wait until the appeal to ask for that certification. Thank you for your time and your attention. I have one more question before you sit down, kind of as a practical matter. What's the status of the state trial? As I understood, the Rodin's were actually successful in that trial. Is that on appeal? It is, Your Honor. I'm sorry. I checked the docket yesterday in preparation for the hearing today. The matter has been, the appellant's brief has been submitted. The respondent's brief has been submitted. I believe we're still waiting on the reply brief from the appellant, and my understanding from talking with Mr. Edison before the argument today is that it's expected that the North Dakota Supreme Court will take that case up during their December term. And this issue is not present in that appeal, correct? You're correct, Your Honor. And if the North Dakota Supreme Court affirms that, what remains at issue? Is it just defense costs? No. If the North Star has hired a lawyer to represent the Rodin's in the underlying matter, they continue to pay for that lawyer. So if the appeal is decided in favor of the Rodin's, then it would moot this case. Thank you. Thank you, Your Honor. I see that you used up your time the first time around, but I will give you a minute. Okay. Just a couple points. Resolution of the underlying case in favor of the Rodin's on appeal would not moot this case. There would still be the issue if, in fact, this court were to overrule the district court's opinion, my client would have a right to seek attorney's fees and costs from North Star. So it wouldn't, in fact, moot the underlying case. The other issue that I wanted to briefly touch on, counsel made a statement about the release of lead, that you wouldn't have a release in the context of a lead exposure. You would have a release in those circumstances. It would be the release, the ingestion by the child of the lead. That would be the release. So it wouldn't be a release. And that's the interesting part about this case, in addition, is that the release is from a propane heater doing exactly what the propane heater was supposed to do. There's no accidental discharge or other circumstances involved in the release. Thank you. Thank you. Thank you to both counsel.